Carver v. Lewis, Administrator.

No. 12,073.

CARVER v. LEWIS, ADMINISTRATOR.

DECEDENTS' ESTATES.—*Final Settlement.*—*Collateral Attack.*—The approval by the proper court of the final settlement account of an administrator is an adjudication of all questions involved, and can not be collaterally attacked.

SAME.—*Action Against Administrator after Discharge.*—*Omission of Property from Inventory.*—*Conversion.*—*Trusts.*—While the final settlement of a decedent's estate remains in force, it is conclusive upon the parties interested, and an action can not be maintained against the discharged administrator to recover the proceeds of notes, belonging to the estate, which he failed to include in the inventory and account for but converted to his own use. Nor can the fact that such notes were held by the administrator, before his appointment as such, as trustee for the decedent while living change the case.

From the Putnam Circuit Court.

*H. H. Mathias* and *J. B. Black,* for appellant.
*D. E. Williamson* and *A. Daggy,* for appellee.

ZOLLARS, J.—By this action appellant is seeking to have a claim allowed against, and collected from the estate of Jacob Durham, deceased, of which estate appellee is administrator. She filed an amended complaint in the circuit court, to which a demurrer was sustained. For a review and reversal of that ruling she prosecutes this appeal.

The conclusion we have reached as to the correctness of that ruling renders it unnecessary for us to set out the entire complaint, either at length or in substance. So much of it as presents the controlling question may be summarized as follows: In 1847, Jacob Durham advanced to his son, Benjamin A. Durham, a tract of land, worth about $3,500, and surrendered to him its possession. He did not convey the legal title, but treated the land as the absolute property of Benjamin A. Benjamin A. took possession of the land, and occupied it until 1860, in the meantime having expended upon it $4,000 in the way of valuable and lasting improvements. On the 9th day of January, 1860, Benjamin A. en-

tered into a contract with one Williams for an exchange of lands, by the terms of which he was to cause a legal title to be conveyed to Williams, and Williams was to give his notes and mortgage for $2,500, as the difference in value between the tracts of land. On that day, at the request of Benjamin A., Jacob Durham conveyed to Williams the legal title to the lands so occupied by Benjamin A., and, over his objections and protest, took the notes and mortgage from Williams in his own name, and took and held the possession of the same. Benjamin A. died intestate, in June, 1860, leaving appellant, as his widow, and four minor children. In August, 1860, Jacob Durham was appointed administrator of the estate of Benjamin A. He proceeded with the administration of the estate, closed it up, and was finally discharged in June, 1862. It is averred in the complaint that he paid all the debts against the estate, and distributed the residue to the heirs.

It is charged that he failed to inventory the said notes and mortgage as a part of the estate, or in any manner refer to or account for them in the administration of the estate. While administrator, he collected $130 upon the notes, and afterwards $1,200. Jacob Durham died in 1864. His administrator took possession of the notes and mortgage as a part of his estate, and collected the balance due upon them.

It is further charged in the complaint, and insisted upon in argument, that by reason of the facts above stated, Jacob Durham held the notes and mortgage as the trustee of Benjamin A.

It will be observed that all debts against the estate of Benjamin A. Durham were paid, distribution of the surplus was made, a final report was filed, a final accounting was had, the estate was settled and closed, and Jacob Durham, as administrator, was discharged in June, 1862.

No objection is shown to have been made to the final report or discharge of Jacob Durham as such administrator; no effort was made to recover from him the notes and mort-

gage, or the money collected upon them, nor has there been any other effort to collect the amount from his estate until this action was instituted in 1882. The final report of Jacob Durham as such administrator has not been set aside, nor has there been any effort to set it aside. Such being the case, the important and controlling question is, can appellant main- tain this action notwithstanding such final settlement?

We could not presume, in order to strengthen appellant's complaint, that at the time of the final settlement she was under legal disability, because it appears from the complaint that at the time this action was commenced, and for some three years prior thereto, she was a married woman; and if we could, it would be of no avail to her in this case, because she is not proceeding to have that final settlement set aside, but is pro- ceeding regardless of it.

The law in force during the administration of the estate required, as it does now, that the administrator should make a full inventory of the personal estate of the decedent, within his knowledge, including all demands in favor of the estate, with a particular description thereof, etc., and that he should return such inventory to the county clerk, and take an oath to be endorsed upon, or annexed to it, that the same was a true statement of all the personal estate of the deceased which had come to his knowledge. 2 R. S. 1876, pp. 505, 508; sec- tions 34, 44, 46.

From such inventory the widow had the right to select ar- ticles to the amount of five hundred dollars. It was the duty of the administrator to collect all claims and demands of every nature due to the estate, and report to the court at stated times. Provision was also made for a final accounting and final settlement of the estate, and distribution to the heirs. All of these matters, and the doings of the administrator, became matters of record, open to the inspection of all in- terested.

The above mentioned provisions of the statute were fol- lowed by section 116, which provided that, "After the debts

and legacies of an estate and charges of administration are paid, and all claims in favor of such estate are disposed of according to law, the executor or administrator shall be discharged from the further administration thereof, and no final settlement shall be revoked or re-opened, except by appeal to the circuit court, and the same shall there appear to have been illegally made : *Provided, however*, That any person interested in said estate so settled, may have said settlement set aside for mistake or fraud, at any time within three years after said settlement, and if such person be under any legal disabilities at the time of said settlement, then within three years after the removal of such disability." 2 R. S. 1876, p. 537. See, also, R. S. 1881, sections 2402, 2403.

Involved in the administration and final settlement of estates under the above statutes, were the questions, as to whether or not the administrator had made an inventory of, and turned into the estate, all of the personal estate belonging to it, and all claims of every nature due to it, whether evidenced by notes or accounts. The inventory, filed under oath, would show upon its face that all such were included, and the reports would necessarily show the collection or proper disposition of them. The approval of the final settlement and account in this case, as in all similar cases, was an adjudication of those questions, and an adjudication that became final and conclusive, unless appealed from, or assailed for mistake or fraud within three years after the final settlement; that adjudication can not be disregarded nor overthrown in a collateral attack by any of the interested parties. It is alleged here, that the notes held by Jacob Durham were not included in the inventory, nor were they accounted for by him, although they belonged to the estate of Benjamin A. Durham.

The approval of the final settlement account, the discharge of the administrator, and the final settlement of the estate, were an adjudication that all of the notes and accounts belonging to Benjamin A. Durham, or in which he had any

interest, were included in the inventory and properly accounted for. And hence, so long as that final settlement and adjudication stands, appellant, as one of the interested parties, can not be heard to say that there were other notes in the hands of the administrator which he did not include in the inventory, and for which he did not account. And because she can not do this, she can not maintain this action.

It is argued that Jacob Durham, by virtue of the above facts, held the notes as trustee for Benjamin A. before he was appointed administrator. That fact, if conceded, could not possibly change the case. If Jacob Durham, in fact, held the notes as trustee, that did not of course destroy the ownership in Benjamin A.; they were still his, and after his death should have been included in the inventory, and collected as any other notes that might have been due to him. And if, in such case, Jacob Durham, as administrator, neglected to inventory the notes and turn them into the estate, the case is precisely the same as if he had neglected to inventory any other notes and had converted them to his own use.

The holding of our cases is, that the approval of the final settlement account, and the final settlement of the estate by the probate court, are an adjudication of all questions involved and can not be assailed in a collateral attack, and that so long as such final settlement stands, interested parties are bound by it, and can not maintain an action against the discharged administrator upon the ground that he converted to his own use assets of the estate which he should have included in the inventory and accounted for to the estate, and that such final settlements can not be set aside after three years subsequent thereto. Upon this, it would not be profitable to extend this opinion further than to cite the cases. *Pate* v. *Moore,* 79 Ind. 20; *Peacocke* v. *Leffler,* 74 Ind. 327; *Sanders* v. *Loy,* 61 Ind. 298; *Holland* v. *State, ex rel.,* 48 Ind. 391; *Barnes* v. *Bartlett,* 47 Ind. 98; *Candy* v. *Han-*

*more,* 76 Ind. 125; *Reed* v. *Reed,* 44 Ind. 429; *Vestal* v. *Allen,* 94 Ind. 268.

There may be cases where to apply the doctrine of *res adjudicata,* and the limit fixed by the statute within which final settlements may be set aside, may work a hardship, but doubtless such cases will be very few in comparison with the wrongs that would result from an opposite doctrine, and a statute fixing a much longer, or no limit. If the doctrine were not so applied, and the statute fixed no limit, great, wrongs might, and doubtless would, result from the prosecution of unfounded claims against the estates of deceased administrators and their bondsmen.

Appellant is not in a favorable position to complain of any hardship resulting to her. So far as shown, she in fact knew that the notes were not included in the inventory, nor accounted for by the administrator as belonging to her husband's estate. So far as shown, she knew of the notes, and all that she now alleges in relation to them, at the time of the final settlement, and before that time, as well as she does now. The way was open to her to have the notes included in and accounted for as a part of the estate. She might have had the final report set aside within three years after its approval. She, however, did nothing, and objected to nothing, until more than twenty years after the approval of the final settlement, and eighteen years after the death of the administrator.

It results from what we have said, that the court below was not in error in sustaining the demurrer to the complaint. Whether or not appellant might, in any event, maintain an action except through an administrator, is a question we need not now decide.

The judgment is affirmed, at appellant's costs.

Filed Oct. 10, 1885; petition for a rehearing overruled Jan. 6, 1886.